**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**AARON SAXON PROPERTIES, LLC**

**CIVIL ACTION**

**VERSUS**

**NO. 25-239-JWD-EWD**

**FEDERAL EMERGENCY
MANAGEMENT AGENCY, ET AL.**

**RULING AND ORDER**

This matter comes before the Court on the *Motion to Dismiss* (Doc. 27) filed by defendant

Imperial Fire & Casualty Insurance Company ("Imperial" or "Defendant"). Imperial appears:

> [I]n its capacity as a Write-Your-Own ("WYO") Program carrier participating in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968, as amended ("NFIA"), [42 U.S.C. § 4001 *et seq.*][,] appearing herein in its "fiduciary" capacity[,] [44 C.F.R. § 62.23(f)] as the "fiscal agent[,]" [42 U.S.C. § 4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998),] of the United States and at the expense of the United States, [*Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d. 397, 399–400, 402 (5th Cir. 2012)] . . . .

(*Id.* at 1.) Plaintiff Aaron Saxon Properties, LLC, ("Plaintiff" or "ASP") opposes the motion, (Doc.

29), and Imperial has filed a reply, (Doc. 32). Oral argument is not necessary. The Court has

carefully considered the law, the facts in the record, and the arguments and submissions of the

parties and is prepared to rule. For the following reasons, Imperial's motion is denied.

I.    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

  **A.  Overview of the Case**

This is a flood case. According to the *First Amended Complaint* ("*FAC*") (Doc. 12), ASP

is the owner and manager of long-term residential rental properties. (*Id.* ¶ 3.) ASP owned certain

property in Baker, Louisiana (the "Property"). (*Id.* ¶ 7.) That Property sustained significant flood

damage around October 2020. (*Id.* ¶ 8.)

Imperial issued a flood insurance policy under the NFIP bearing Policy No. 0000163341 (the "Policy") to ASP which provides coverage for certain damages to the Property. (*Id.* ¶ 9.) That Policy was in force when the Property sustained flood damage. (*Id.*)

ASP pleads that it filed a claim under the Policy with FEMA and/or Imperial. (*Id.* ¶ 11.) In response, FEMA and/or Imperial dispatched Wade Reeves to adjust the loss. (*Id.* ¶ 12.) Reeves assessed the value of the damage at approximately $29,000. (*Id.* ¶ 13.)

### B. Timing of the Denial Letter

Part of the instant motion involves when Imperial denied ASP's claim. That date is significant because, by statute, ASP had to file suit within one year of the mailing of the notice of denial. *See* 42 U.S.C. § 4072.

Imperial submits the Declaration of Wendy Strow, Claims Litigation Manager at Imperial's third-party vendor that issues and services the NFIP Standard Flood Insurance Policies ("SFIP") on behalf of Imperial. (Strow Decl. ¶ 1, Doc. 27-2.) Strow declares that, for reasons that are not relevant now, "Imperial *issued* a denial letter to Plaintiff dated February 22, 2024 with regard to the flood loss claim . . . ." (*Id.* ¶ 8 (emphasis added).) Strow attaches that denial letter, which was sent by Susan Jones, a Claims Examiner in the Flood Department of the National General Insurance Company. (*Id.*; *see also* Strow Decl. Ex. 2, Doc. 27-3.)

ASP disputes this. According to the *FAC*, FEMA and/or Imperial formally denied the claim via an email to ASP on March 20, 2024. (*FAC* ¶ 14, Doc. 12.) To support that allegation, ASP submits an affidavit of Aaron Saxon, who attests that, on that day, he contacted Reeves via email because he had not received a response to the status of his property damage claim. (Saxon Aff. ¶ 5, Doc. 29-1.) Reeves responded, "I'm going to forward you the email I sent back in February. For some reason[,] it did not put you on the email. Sorry about that." (*Id.* ¶ 6; *see also* Saxon Aff.

2

Ex. A-1, Doc. 29-1 at 3 (Reeves' email reflecting same).) Per Saxon, "There were no attachments to that e-mail, and I did not receive a subsequent email from Mr. Reeves." (Saxon Aff. ¶ 7, Doc. 29-1.) Saxon has also not received any further correspondence from Reeves. (*Id.* ¶ 8.) Saxon avers that he "never received the February 22, 2024, denial letter . . . ." (*Id.* ¶ 9.)

### C. Procedural History

ASP initially sued FEMA on March 20, 2025, "to enforce the terms of the Policy and recover the damages caused to the Property . . . ." (*Compl.* ¶¶ 5, 15, Doc. 1.) On June 19, 2025, ASP amended the *Complaint* to add Imperial as a Defendant. (*FAC* ¶ 6, Doc. 12.) The proof of service in the record shows that Imperial was served on June 23, 2025, (Doc. 17), though Strow avers that "Imperial was served on June 20, 2025[,] with [the *FAC*] . . . ." (Strow Decl. ¶ 4, Doc. 27-2).

Imperial now moves for dismissal. (Doc. 27 at 1.) Imperial argues:

> The record evidence establishes that Plaintiff failed to file the [*FAC*], which names Imperial for the first time as a Defendant, in this proper U.S. District Court within one year of the February 22, 2024 denial of all or part of the Plaintiff's October 2020 flood claim as required by [SFIP] Article VII(R) and 42 U.S.C. § 4072.

(*Id.*)

ASP responds that its claims against Imperial are timely for two reasons. (Doc. 29.) First, Imperial failed to establish that it sent the denial letter on February 22, 2024. (*Id.* at 2–3.) Rather, Imperial sent the denial by email on March 20, 2024. (*Id.*) Second, ASP timely filed the original *Complaint* against FEMA on March 20, 2025, and, when ASP named Imperial in the *FAC* on June 19, 2025, that pleading relates back to the filing of the original *Complaint*. (*Id.* at 3–5.) The Court will take up both issues in turn.

## II.    RULE 12(B)(6) STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 499 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, [the court] accept[s] all well-pleaded facts as true and construe[s] the complaint in the light most favorable to the plaintiff." *Id.* The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dis. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct.]'" *Calhoun*

4

*v. City of Houston Police Dep't*, 855 F. App'x 917, 919-20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556.)

"In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). "Although a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference).

Additionally, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "A court need not advise either party of its intention to convert the motion." *Hodge v. Engleman*, 90 F.4th 840, 845 (5th Cir. 2024) (cleaned up). "The only requirement is that the non-moving party have at least ten days in which to submit its own evidence." *Id.* (citation omitted). "That ten-day period begins running when the non-movant is first put on notice that, based on its acceptance of evidence outside the pleadings, the court *could* convert the Rule 12(b)(6) motion into a summary judgment." *Id.* (cleaned up). Nevertheless, "it is

within the district court's discretion whether to accept extra-pleading matter . . . [under Rule 12(b)(6)] . . . and treat it as one for summary judgment or to reject it and maintain the character of the motion as one under Rule [12(b)(6)]. 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1371 (3d ed. 2025).

III.    DISCUSSION

A.  **Timing of the Denial Letter**

1. *Parties' Arguments*

Imperial asserts that ASP's lawsuit is time-barred. (Doc. 27-1 at 4.) Imperial contends that a one-year statute of limitations governs claims for flood losses, (*id.* at 4–7), and Strow's declaration shows that Imperial issued the partial denial on February 22, 2024, (*id.* at 7). Thus, Imperial says, ASP's deadline for filing suit in federal court was "February 22, 2025, or March 20, 2025," yet Imperial was not named as a defendant until June 19, 2025. (*Id.*) Thus, ASP's claim should be dismissed, particularly considering the policy of requiring strict compliance with the terms and conditions of flood policies. (*Id.* at 7–8 (citations omitted).)

ASP never contests the one-year prescriptive period but instead disputes that the denial letter was mailed on February 22, 2024. (Doc. 29 at 2.) "[T]he mere existence of a letter dated February 22, 2024, does not establish mailing on that date. [Imperial] has produced no evidence— such as certified mail receipts, transmission records, a declaration, or any other verifiable evidence—that the letter was ever actually sent." (*Id.*) Rather, Plaintiff points to the March 20, 2024, email from Reeves and argues that "there is still no evidence that the denial was ever mailed or that ASP otherwise received the denial." (*Id.* at 2–3.)

Imperial responds that Strow's declaration proves that Imperial issued the denial letter on February 22, 2024. (Doc. 32 at 2.) Imperial relies on the mailbox rule, arguing that ASP is

6

presumed to receive a letter mailed absent proof by the party disputing receipt. (*Id* at 2–3.) That

presumption is "not easily overcome" and requires "evidence that the mailing was not

accomplished." (*Id.* at 3 (citing *In re Eagle Bus Mfg., Inc.*, 62 F.3d 730, 735 (5th Cir. 1995)).)

> Generally, self-serving declarations of non-receipt do not suffice to
> rebut the presumption of receipt. *Kinash v. Callahan*, 129 F.3d 736,
> 738 (5th Cir. 1997) (claimant's sworn word that he did not receive
> notice was insufficient to rebut presumption). Instead, the party
> disputing receipt must present substantial evidence to rebut the
> presumption of delivery and receipt. *Shur-Value Stamps, Inc. v.
> Phillips Petroleum Co.*, 50 F.3d 592, 596 (8th Cir.1995).

(*Id.*) Here, ASP offers nothing but its self-serving affidavit to support its position, so the Court

should grant Imperial's motion. (*Id.* at 4.)

### 2. *Law and Analysis*

Preliminarily, there is no dispute about the prescriptive period; by statute, ASP had to file

suit "within one year after the date of *mailing* of notice of disallowance or partial disallowance . .

. ." 42 U.S.C. § 4072 (emphasis added). But the parties hotly dispute whether ASP complied with

this law. Imperial's motion is premised on the fact that the denial letter was sent on February 22,

2024. Having carefully considered the matter, the Court finds that ASP has established, for

purposes of the instant motion, that the letter was not sent on that date.

The Court bases this conclusion on the allegations of the *FAC*. Specifically, this pleading

states that FEMA and/or Imperial formally denied the claim via an email to ASP on March 20,

2024. (*FAC* ¶ 14, Doc. 12.) On that basis alone, the motion to dismiss can be denied.

Imperial argues that the February 2024 denial letter can be considered without converting

its motion to one for summary judgment, (*see* Doc. 27-1 at 4), but the Court disagrees. Even if

Imperial is right about the denial letter, Imperial still relies on Strow's declaration to establish

when the letter was "issued," and that declaration is clearly beyond the scope of Rule 12(b)(6). *See*

*Fruge v. National Flood Ins. Program*, No. 22-1337, 2022 WL 3703861, at *3 (W.D. La. Aug. 26, 2022). The same is true for Saxon's affidavit. *See id.* Thus, the Court must convert the motion to dismiss to one for summary judgment if it is to decide the issue based on the evidence in the record.

The Court declines to do so. First, procedurally, the instant motion was filed before the scheduling order was issued and before the start of discovery. (Doc. 37.) Thus, on its face, the motion appears premature.

Second, and relatedly, there appears to be questions of fact over whether the letter was mailed on the day in question. Again, on the one hand, Strow declares, "Imperial *issued* a denial letter to Plaintiff dated February 22, 2024 with regard to the flood loss claim . . . ." (Strow Decl. ¶ 8, Doc. 27-2 (emphasis added).) And, on the other hand, Saxon avers that Reeves told him, "I'm going to forward you the email I sent back in February. For some reason[,] it did not put you on the email. Sorry about that." (Saxon Aff. ¶ 6, Doc. 29-1.) Saxon then says that Reeves did not attach the February 2024 denial letter to that email, that Reeves sent no further correspondence to ASP, and that ASP never received the February 2024 denial. (*Id.* ¶¶ 7–9.)

In its reply, Imperial points to the presumption of the mailbox rule and the inability of Plaintiff to rely on self-serving affidavit testimony (Doc. 32 at 2–4), but the Court rejects this argument. Even if this argument were properly before the Court (which is questionable, *see Pullen v. St. Gabriel Health Clinic Inc.*, No. 25-52, 2026 WL 499596, at *17 (M.D. La. Feb. 23, 2026) (deGravelles, J.) (stating that "It is the practice of [the Fifth Circuit] and the district courts to refuse to consider arguments raised for the first time in reply briefs[,]" but noting that "the Court has discretion to [do so] . . . depending on the circumstances of the case." (citations omitted)), and even if Imperial is right about the mailbox rule (i.e., even if Imperial's general authority about the mailbox rule applies to flood cases), ASP has provided evidence beyond Saxon's affidavit, namely

8

Reeve's email itself, which is consistent with Saxon's account. (Saxon Aff. Ex. 1-A, Doc. 29-1 at 3.) Ultimately, these disputes can be aided by further factual development, such as the testimony of Ms. Jones, who drafted the denial, and Ms. Strow herself, who could clarify what she meant by "issued."

Imperial argues that an adjuster like Reeves does not have the authority under the SFIP to disapprove a claim whereas Jones did. (Doc. 32 at 4–5 (citing SFIP Art. VII (J)(8) ("We have not authorized the adjuster to approve or disapprove claims or to tell whether we will approve your claim."))).) But the issue is not whether Reeves had authority to deny the claim; the question is whether Imperial mailed the denial in February 2024 or in March 2024, and Reeves' email is probative of that fact.

In sum, the Court finds that deciding the matter on summary judgment is premature at this time. *See Fruge*, 2022 WL 3703861, at *4 (agreeing with parties that more time for discovery was needed before resolving the merits of whether plaintiff failed to submit timely proof of loss). This conclusion is bolstered by the considerable discretion given to the Court in converting motions to dismiss to motions to summary judgment. *See Brackens*, 829 F. App'x at 23; *Dorsey*, 540 F.3d at 338; Wright & Miller, *supra*, at § 1371. As a result, the Court finds that, as pled, ASP received the denial letter on March 20, 2024.

### B. Relation Back

#### 1. Parties' Arguments

Again, ASP timely filed suit against FEMA on March 20, 2025. (Doc. 1.) ASP named Imperial as a defendant in June 2025. (*FAC* ¶ 6, Doc. 12.) Thus, the next issue is whether this amendment relates back to the filing of the original complaint under Rule 15(c).

ASP maintains that it does. (Doc. 29 at 3–5.) The claims all arise from the same "conduct transaction, or occurrence described in the original pleading." (*Id.* at 4.) Moreover, Imperial had notice of the lawsuit within the Rule 4(m) service period, particularly in light of the facts (1) that Imperial "appears in its 'fiduciary' capacity as the 'fiscal agent' of the United States;" (2) that ASP initially named FEMA; and (3) that "Imperial . . . admits in its *Memorandum*, 'FEMA regulations establish the terms of the SFIP, rate structures, and premium costs. Claims are ultimately paid out of the U.S. Treasury.'" (*Id.*) Finally, Imperial knew or should have known that it was the intended defendant, as "FEMA and Imperial are inextricably linked by statute and regulation." (*Id.*) ASP relies on *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010), in support of its position. (*Id.* at 5.)

In reply, Imperial argues that there is no relation back. (Doc. 32 at 5.) The denial letter was issued more than one year before the *Complaint* was filed. (*Id.*) Moreover, ASP has the burden of establishing relation back, and it offers no evidence that FEMA and Imperial are "inextricably linked." (*Id.*) It is undisputed that the Policy was issued by Imperial since May 4, 2016, and there is no reasonable basis for the mistaken identity. (*Id.* at 5–6.) Imperial relies on *Searls v. Insureco Agency & Ins. Servs.*, No. 07-4250, 2009 WL 35340, at \*4 (E.D. La. Jan. 6, 2009), *aff'd*, 338 F. App'x 365 (5th Cir. 2009). (*Id.* at 6.) Moreover, as in *Searls*, Rule 4(m) requires service within 90 days, and, in the instant case, Imperial was served with the amended complaint more than 90 days after the filing of the original complaint. (*Id.*)

### 2. Law and Analysis

#### a. Rule 15(c) Generally

Rule 15 provides in relevant part:

**(c) Relation Back of Amendments.**

**(1)** ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:

. . .

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

"Courts interpreting Rule 15(c)(1)(C) have held that three elements must be met before an amendment will relate back: (1) the same conduct, transaction, or occurrence; (2) notice; and (3) mistake." *Liggins v. City of Duncanville, Texas*, No. 20-0654, 2021 WL 929105, at *4 (N.D. Tex. Mar. 11, 2021) (citing *Wilson v. City of Mission*, No. 18-399, 2020 WL 2079359, at *3 (S.D. Tex. Apr. 29, 2020)); *see also Manfre-Lane v. South Tex. Dental Assocs. L.P.*, No. 20-2931, 2022 WL 2836797, at *4 (N.D. Tex. May 23, 2022) (Ramirez, M.J.), *report and recommendation adopted*, No. 20-2931, 2022 WL 2835839 (N.D. Tex. July 20, 2022) (quoting *Liggins* with approval). Imperial does not seriously dispute the first element, so the Court turns to the remaining two.

### b.  Notice

"Rule 15(c)(1)(C)(i) simply requires that the prospective defendant has received sufficient 'notice of the action' within the Rule 4(m) period that he will not be prejudiced in defending the case on the merits." *Krupski*, 560 U.S. at 554 n.5. Thus, there are two issues with notice: (1)

11

whether Imperial received sufficient notice so as not to be prejudiced, and (2) whether it did so within the time requirements of Rule 4(m).

As to the former, "the notice need not be formal." *Id.* (quoting Advisory Committee's 1966 Notes 122). And "it is 'notice and not service that Rule 15(c) requires.'" *Moreau v. Shell Oil Co.*, No. 12-2027, 2015 WL 5822985, at *4 (E.D. La. Oct. 6, 2015) (quoting *Montgomery v. U.S. Postal Serv.*, 867 F.2d 900, 903 (5th Cir. 1989)). Further, the Fifth Circuit has held that it "will infer notice if there is an identity of interest between the original defendant and the defendant sought to be added or substituted." *Elvir v. Trinity Marine Prods., Inc.*, 327 F.R.D. 532, 545 n.102 (M.D. La. 2018) (Wilder-Doomes, M.J.) (citing *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998)), *aff'd*, No. 16-814, 2018 WL 4628320 (M.D. La. Sept. 27, 2018) (Dick, C.J.). "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* (quoting *Jacobsen*, 113 F.3d at 320).

The Court finds, at least at this stage, that ASP has established that there is sufficient identity of interests between FEMA and Imperial such that notice on FEMA constitutes notice on Imperial. In the instant motion, Imperial represents that it appears:

> [I]n its capacity as a Write-Your-Own ("WYO") Program carrier participating in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968, as amended ("NFIA"), [42 U.S.C. § 4001 *et seq.*][,] appearing herein in its "fiduciary" capacity[,] [44 C.F.R. § 62.23(f)] as the "fiscal agent[,]" [42 U.S.C. § 4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998),] of the United States and at the expense of the United States, [*Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d. 397, 399-400, 402 (5th Cir. 2012)] . . . .

(Doc. 27 at 1.) This is consistent with Imperial's Certificate of Interested Persons:

> Imperial . . . is owned 100% by National General Holdings Corp, which is a wholly owned subsidiary of The Allstate Corporation, a

12

> publicly traded company. Neither Imperial, nor any of its parents, subsidiaries or affiliates has any direct financial interest in the outcome of this litigation as Imperial is appearing herein in its "fiduciary" capacity as the "fiscal agent of the United States" , and as a Write-Your-Own Program carrier participating in the National Flood Insurance Program. See 42 U.S.C. § 4001, et. seq.
>
> Further, the party in interest in this matter is the National Flood Insurance Program, as all claim payments under a [SFIP] are paid with U.S. Treasury funds (not the funds of Imperial) pursuant to the Financial Assistance Subsidy Arrangement by and between the [FEMA] and the Write-Your-Own Program carriers such as ASI. See 42 U.S.C. § 4017.

(Doc. 34 at 2.)

All of this also echoes the law cited by Imperial in its original memorandum. (Doc. 27-1 at 3 (quoting *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 342 (5th Cir. 2005)). Specifically, *Gallup* provides:

> The . . . NFIP[ ] . . . was established by the National Flood Insurance Act of 1968 (the "Act"), 42 U.S.C. § 4001, et seq. . . . FEMA[ ], an agency of the Department of Homeland Security, administers the NFIP. The NFIP has two components: (1) a flood insurance program, and (2) a unified national plan for flood management. 42 U.S.C. §§ 4001(b) and (c). Initially, the program operated primarily through a pool of private insurers under the supervision and with the financial support of the Department of Housing and Urban Development. *In 1977, the Secretary of HUD made FEMA primarily responsible for its operation*. 42 U.S.C. § 4071. FEMA by regulation promulgated the . . . SFIP[ ] and provided for marketing and claims adjustment by private insurers operating as . . . WYO[ ] companies. These companies issue SFIPs in their own names, and arrange for the adjustment, settlement, payment and defense of all claims arising from the policies. *FEMA regulations establish the terms of the SFIP, rate structures and premium costs. Claims are ultimately paid out of the U.S. Treasury.*

*Gallup*, 434 F.3d at 342 (emphasis added).

Under the circumstances, the Court finds a clear identity of interest between the original defendant FEMA and its "fiscal agent" and "fiduciary" Imperial. As a result, FEMA and Imperial

are inextricably linked such that notice to one constitutes notice on the other. *Cf. Sanders-Burns v. City Of Plano*, 594 F.3d 366, 374 (5th Cir. 2010) (when the original complaint "is perfected upon an agent of a party sought to be brought in by amendment, there is adequate notice of the action to that party." (quoting *Kirk v. Cronvich*, 629 F.2d 404, 407 (5th 1980), *overruled in part on other grounds as noted by Honeycutt v. Long*, 861 F.2d 1346, 1352 n.9 (5th Cir. 1988))); *see also Douglas v. National R.R. Passenger Corp.*, No. 97-488, 1997 WL 660598, at *2 (E.D. La. Oct. 22, 1997) (Berrigan, J.) (denying summary judgment and finding "that this contractual designation more than adequately establishes an identity of interest between the Southern Pacific claims agent, acting on behalf of National, and National, so that institution of an action against National's designated agent, Southern Pacific, serves to provide notice of the litigation to National."); *see also Batiste v. Quality Constr. & Prod. LLC*, No. 14-3045, 2018 WL 1003761, at *6 (W.D. La. Feb. 21, 2018) (Hanna, M.J.) (explaining that "service on a party's agent constitutes constructive notice to the party, since it is a fundamental rule of agency law that notice to the agent constitutes notice to the principal[,]" and that "a contract establishing an agency relationship would be a valid basis for imputing one party's knowledge to another").

As to the timing of the notice, Imperial complains that ASP failed to provide notice within Rule 4(m)'s 90-day period. As a result, Imperial says, notice was insufficient.

The Court disagrees. Preliminarily, the Court has already found that, for present purposes, notice on FEMA establishes notice on Imperial. Thus, Imperial timely received notice when FEMA did, and this part of Rule 15(c) has been satisfied.

But, even putting this aside, while ASP did exceed the 90-days period in serving Imperial, the Court is allowed to extend that period. Specifically, "[i]n allowing a name-correcting amendment within the time allowed by Rule 4(m), [Rule 15] allows not only the [90] days

14

specified in that rule, but also any additional time resulting from any extension ordered by the court pursuant to that rule." Fed. R. Civ. P. 15  advisory committee's notes to 1991 amendments. Under Rule 4(m), "the court must extend the time for service for an appropriate period . . . if the plaintiff shows good cause for the failure[.]" Fed. R. Civ. P. 4(m). And "a district court enjoys discretion under Rule 4(m) to extend the time for service even when a plaintiff fails to show good cause." *U.S. ex rel. Bowman v. Computer Learning Ctrs.*, 73 F. App'x 735, 736 (5th Cir. 2003) (per curiam) (citing *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996) ("If good cause does not exist, the court *may*, in its discretion, decide whether to dismiss the case without prejudice or extend time for service.") (quoted with approval by *Bowman*, 73 F. App'x at 736)).

Here, Imperial filed its original complaint against FEMA on March 20, 2025, (Doc. 1.) The *FAC* adding Imperial was filed on June 19, 2025, (Doc. 12). At the latest, Imperial received notice either the next day (according to Strow's declaration, (Strow Decl. ¶ 4, Doc. 27-2)) or a few days later on June 23, 2025 (according to the proof of service in the record, (Doc. 17)). Thus, Imperial received notice either 92 days or 95 days after ASP filed the *FAC*. While ASP has not shown good cause for its delay, the Court will exercise its discretion to extend the period, particularly given the facts that ASP was only a few days late and, most importantly, Imperial has not shown prejudice from this minor delay. *See Clark v. GeoVera Advantage Ins. Servs., Inc.*, No. 23-7289, 2025 WL 948165, at *4 (E.D. La. Mar. 28, 2025) (finding that "[r]elation back [was] . . . required" because "GeoVera Specialty does not argue that 'it will . . . be prejudiced in defending' the Clarks' suit 'on the merits.'" (quoting Fed. R. Civ. P. 15(c)(1)(C)(i)).

In sum, Imperial "received such notice of the action that it will not be prejudiced in defending on the merits . . . within the period provided by Rule 4(m) for serving the summons and complaint." Fed. R. Civ. P. 15(c)(1)(C)(ii). As a result, this element is satisfied.

c.   Mistake

Imperial next argues that ASP had no reasonable basis to mistakenly name FEMA as a

defendant, but Imperial misapplies the analysis. "The question under Rule 15(c)(1)(C)(ii) is not

whether [ASP] knew or should have known the identity of [Imperial] as the proper defendant, but

whether [Imperial] knew or should have known that it would have been named as a defendant but

for an error." *Krupski*, 560 U.S. at 548. "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant*

knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should

have known at the time of filing her original complaint." *Id.* Critically:

> Information in the plaintiff's possession is relevant only if it bears
> on the defendant's understanding of whether the plaintiff made a
> mistake regarding the proper party's identity. For purposes of that
> inquiry, it would be error to conflate knowledge of a party's
> existence with the absence of mistake. A mistake is "[a]n error,
> misconception, or misunderstanding; an erroneous belief." Black's
> Law Dictionary 1092 (9th ed.2009); see also Webster's Third New
> International Dictionary 1446 (2002) (defining "mistake" as "a
> misunderstanding of the meaning or implication of something"; "a
> wrong action or statement proceeding from faulty judgment,
> inadequate knowledge, or inattention"; "an erroneous belief"; or "a
> state of mind not in accordance with the facts"). That a plaintiff
> knows of a party's existence does not preclude her from making a
> mistake with respect to that party's identity. A plaintiff may know
> that a prospective defendant—call him party A—exists, while
> erroneously believing him to have the status of party B. Similarly, a
> plaintiff may know generally what party A does while
> misunderstanding the roles that party A and party B played in the
> "conduct, transaction, or occurrence" giving rise to her claim. If the
> plaintiff sues party B instead of party A under these circumstances,
> she has made a "mistake concerning the proper party's identity"
> notwithstanding her knowledge of the existence of both parties. The
> only question under Rule 15(c)(1)(C)(ii), then, is whether party A
> knew or should have known that, absent some mistake, the action
> would have been brought against him.

*Id.* at 548–49. Ultimately, the High Court rejected the "position that any time a plaintiff is aware

of the existence of two parties and chooses to sue the wrong one, the proper defendant could

16

reasonably believe that the plaintiff made no mistake." *Id.* at 549. Again, "the question . . . is what the prospective defendant reasonably should have understood about the plaintiff's intent in filing the original complaint against the first defendant." *Id.* at 553–54.

Here, it is abundantly clear, at least according to the pleadings currently before the Court, that Imperial "knew or should have known that it would have been named as a defendant but for an error." *Id.* at 548. The original complaint clearly shows that ASP intended to sue the party "responsible for the promulgation, administration, and enforcement of the challenged policies." (*Compl.* ¶ 5, Doc. 1.) Moreover, ASP sought to recover for "significant flood damage . . . sustained" on the Property under the Policy in question. (*Id.* ¶¶ 8–9.) ASP specifically lists damages in the amount of $29,000, claims that "FEMA formally denied the claim via email to ASP on March 20, 2024, and asserts that "ASP has filed this suit to enforce the terms of the Policy and recover the damages caused to the Property on or about October 2020." (*Id.* ¶¶ 13–15.) The *FAC* echoes all of these allegations and simply adds Imperial as a responsible party. (*See FAC* ¶¶ 8–15, Doc. 12.)

Given the close relationship between FEMA and Imperial outlined above, (*see* Doc. 34 at 2; Doc. 27 at 1; *Gallup*, 434 F.3d at 342), and given Imperial's admission that it issued the denial letter for the Property, (Strow Decl. ¶ 8, Doc. 27-2), Imperial certainly "knew or should have known that, absent some mistake, the action would have been brought against [it]." *Krupski*, 560 U.S. at 549. *See Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore Pte Ltd*, No. 22-4561, 2023 WL 6482688, at *8 (E.D. La. Oct. 5, 2023) ("this is not a situation where Plaintiffs, with a complete understanding of the facts giving rise to the claim, consciously chose not to name a party in the proceeding. Rather, Plaintiffs assert that the contract documents were ambiguous, and they thought they named the proper contracting parties up until the CEVA Defendants' response to the

17

Amended Complaint suggested otherwise. Confusion regarding the status of the proposed new defendants is precisely the type of mistake that Rule 15(c) was designed to address."); *see also Elvir*, 327 F.R.D. at 546 (reviewing allegations of petition and first amended complaints and concluding that "the proposed Trinity entities should have known that they were not named as defendants only because of Plaintiffs' mistake concerning which Trinity entity was in charge of safety, the nature of which the *Krupski* court found to 'clearly [be] a "mistake concerning the proper party's identity."'"); *cf. Batiste*, 2018 WL 1003761, at *6 (holding that "the relationship between Alliance and Kilgore is such that Alliance should have known about the plaintiff's claim" in part because "Kilgore acted as Alliance's agent . . ." (citations omitted)); *cf. also Moreau*, 2015 WL 5822985, at *4 ("This Court holds that when Petrofac learned that Shell had been sued as the employer of the helicopter simulator operator, it reasonably should have assumed that Plaintiff intended to sue it instead. Petrofac reasonably would have known that it, not Shell, was the employer of the operator alleged to have been negligent in causing Plaintiff's injuries and that Plaintiff had made a mistake in alleging that Shell was the employer."); *cf. also Triay v. National Gen. Ins. Co.*, No. 23-03471, 2024 WL 4346542, at *3 (E.D. La. Sept. 30, 2024) (finding no relation back when plaintiff originally named a "wholly unrelated entity" as defendant because "This is not a situation like in *Krupski* . . . . Here, there is no relationship between Homesite and National General so as to impute the knowledge of the original complaint on the correct insurer.").

As to timing, again, the fact that Imperial was not joined in the case until after the expiration of Rule 4(m)'s 90-day period is irrelevant. Rule 15(c) "plainly sets forth an exclusive list of requirements for relation back, and the amending party's diligence is not among them." *Krupski*, 560 U.S. at 553. A plaintiff's "failure to add [a prospective defendant] during the Rule 4(m) period is not sufficient to make reasonable any belief that she had made a deliberate and informed decision

18

not to sue [that defendant] in the first instance." *Id.* at 555–56. "[A]ny delay on [plaintiff's] part is relevant only to the extent it may have informed [the prospective defendant's] understanding during the Rule 4(m) period of whether she made a mistake originally." *Id.* at 555. For all the reasons given above, Imperial should have known during the Rule 4(m) period about this mistake.

The Court also notes that "the Fifth Circuit has recognized that 'mistakes' are not limited to mistakes of fact as to the existence or identity of a party as a possible defendant; mistakes may also encompass mistakes of law as to who must be sued to pursue a certain claim." *Smith v. University of Texas at San Antonio*, No. 23-538, 2024 WL 4256461, at *15 (W.D. Tex. Aug. 21, 2024), *report and recommendation adopted as modified*, No. 23-538, 2024 WL 4256444 (W.D. Tex. Sept. 18, 2024) (citing *Sanders–Burns v. City of Plano*, 594 F.3d 366, 379 (5th Cir. 2010) (citation omitted) ("In some cases a legal mistake can lead to misnomer, as when a plaintiff names an institutional defendant because of confusion as to whether an individual or an institutional defendant is the proper party . . . .") (internal citation and quotation omitted); *Kirk*, 629 F.2d at 407 (treating decision to sue individual rather than institution as legal mistake of variety contemplated by Rule 15(c)). Here, ASP's mistake in not naming Imperial as well as FEMA appears grounded as much in law as in fact, given the complex legal relationship between those two entities. *See Gallup*, 434 F.3d at 342. This too is no bar to satisfying Rule 15(c). *See Smith,* 2024 WL 4256461, at *15 ("Smith is not arguing that he was factually mistaken about the identity of the Board; he is arguing that his counsel made the legal mistake of failing to name the Regents as opposed to the immune entities it governs. This is not the kind of 'fully informed decision' to sue one party over another that would preclude the application of Rule 15(c)(1)(C)(ii)." (citation omitted)).

Finally, the Court is not persuaded by Imperial's authority. *Searls* predated *Krupski* and focused its analysis on plaintiff's knowledge, not defendant's, as *Krupski* requires. 2009 WL

35340, at *4. In any event, *Searls* was decided at the summary judgment phase, not, as here, at the motion to dismiss phase, which undercuts this and *Searls*' Rule 4(m) notice analysis. *See Searls*, 338 F. App'x at 368 ("We agree with the district court that, based on the record before us, there is no genuine dispute concerning a necessary and material fact to establish timely service—that Insureco owns or can be found at the Dallas, Texas post-office box address" or "that any officer or agent from Insureco could be served at the address."). At this juncture, *Searls* has no applicability.

For all these reasons, the Court finds that this final requirement of Rule 15(c) has been satisfied. Since all elements have been met, ASP's *FAC* relates back to the filing of the original *Complaint*, at least for purposes of the present motion.

### d.  Closing Remarks

The Court notes in closing that its decision is consistent with "the purpose of relation back: to balance the interests of the defendant protected by the statute of limitations with the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski*, 560 U.S. at 550 (citing Advisory Committee's 1966 Notes 122; 3 Moore's Federal Practice §§ 15.02[1], 15.19[3][a] (3d ed. 2009)). On the one hand, "[a] prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose." *Id.* On the other, "repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Id.*

Rule 15 "'is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or

misidentification.'" *Clark*, 2025 WL 948165, at *3 (quoting *Balle v. Nueces Cnty.*, 952 F.3d 552, 557 (5th Cir. 2017) (quoting *Jacobsen*, 133 F.3d at 320)). "For its part, the Fifth Circuit 'take[s] a "sensible approach to reading a complaint so that suits may be maintained regardless of technical pleading errors" as is required by Rule 15(c).'" *Id.* (quoting *Sanders-Burns*, 594 F.3d at 380 (quoting *Hill v. Shelander*, 924 F.2d 1370, 1373–74 (7th Cir. 1991))). "After all, 'the purpose of Rule 15(c) is to "help, not hinder, persons who have a legal right to bring their problems before the courts."'" *Id.* (quoting *Sanders-Burns*, 594 F.3d at 380 (quoting *Hill*, 924 F.2d at 1375)).

In this case, if ASP is to be believed, it first received notice of the claim denial on March 20, 2024. ASP mistakenly sued FEMA within the limitations period. By Imperial's own admission, Imperial is a fiduciary and fiscal agent of FEMA. The two share a special relationship with flood policies and are linked, under the law and by Imperial's own admissions. At this stage, it would be fundamentally unfair—and, indeed, a windfall under *Krupski*—to hold that ASP's claims against Imperial are barred despite ASP timely filing suit against FEMA for the same flood damage and under the same Policy, when FEMA and Imperial are intricately linked, and when Imperial knew or should have known that, but for that mistake, Imperial would have been the proper defendant.

Nevertheless, the Court notes that it bases its decision on the record currently before it, without converting the motion to one for summary judgment. If discovery reveals different facts— like a lack of identity of interests between FEMA and Imperial, or that Imperial otherwise lacked timely notice, or that Imperial should not have known about the mistake—then the Court will revisit the issue (though the Court cautions Imperial not to advance arguments that have been rejected by the Court). For now, however, the Court will deny Imperial's motion.

**IV.    CONCLUSION**

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss* (Doc. 27) filed by defendant Imperial Fire

& Casualty Insurance Company is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>March 19, 2026</u>.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**